## Case No. 4,857.

The FLASH.

[1 Abb. Adm. 67.] [1]

District Court, S. D. New York. Dec., 1847.

---

[1] [Reported by Abbott Brothers.]

William Jay Haskett, for libellant,

T. B. Scoles, for claimant.

BETTS, District Judge. By the maritime law, an affreightment of goods on board a vessel operated reciprocally as a tacit pledge or mortgage of the vessel to the shipper for the conveyance and delivery of the goods according to the contract, and of the goods themselves to the ship to secure payment of the freight earned. Abb. Shipp. 160; 3 Kent, Comm. 162. The lien to the shipper arises alike, whether the contract of affreightment be by charter-party, by bill of lading, or by parol. This principle is fully discussed in the case of The Rebecca [supra]. That case shows very satisfactorily that the obscurity which is to be found in the English system of admiralty law upon this subject is attributable, not to any doubt of the existence of a lien upon the vessel for the performance of the contract of affreightment, but to the fact that the courts of common law in that country have assiduously interposed to restrain the court of admiralty from taking cognizance of the contract. And by a full examination of the continental authorities, both ancient and modern, it is shown to be an established principle of the general law maritime, that the vessel is liable in rem for the performance of the con-

tract of affreightment entered into by the master. See, also, The Phebe [supra]; The Paragon [supra]. These views are fully supported, so far as relates to foreign voyages upon the high seas, by other authorities, which clearly show that the hiring of the vessel, or of any portion of her for a voyage, or an agreement for transportation of goods by her upon the high seas, binds her to the fulfilment of the contract, and this, whether it be evidenced by charter-party, by bill of lading, or by verbal agreement only. The Volunteer [supra]; The Reeside [supra]; The Tribune [supra]; The Waldo [supra]; The Casco [supra].

This principle does not require, as was contended by the counsel upon the argument, that the goods should actually be on board the vessel, to raise the lien. There are, indeed, many classes of liens which rest upon possession, actual or constructive, as their basis. If the basis of a lien claimed upon such contract rested in a figurative possession of the vessel, imparted to the shipper by lading his goods on board, there would be force in the argument, that no lien was acquired until the actual lading of the goods was accomplished. But such is not the principle from which the liability of the vessel is deduced. It is grounded upon the authority of the master to contract for the employment of the vessel, and upon the general doctrine of the maritime law, that the vessel is bodily answerable for such contracts of the master made for her benefit.

Had the undertaking, then, in this case, been for affreightment to the West Indies or to New Orleans, the case would have come within the doctrine of the maritime law, clearly established by the decisions and elementary writers—the contract being a positive contract of affreightment. and not a mere agreement leading to such contract.

It is contended, however, that the present case does not come within the scope of the doctrine above laid down, for the reason that the contract was entered into by the master on behalf of the vessel, at her home port, where, it is urged he has no power to bind the vessel by any such agreement.

The authority of the master, at her home port, to make engagements for a vessel in the course of her ordinary employment, is always implied. To relieve the vessel from responsibility upon such engagements, the dissent of the owner must be shown. Curt. Merch. Seam. 168; Abb. Shipp. 156, 159, and note: General Interest Ins. Co. v. Ruggles, 12 Wheat. [25 U. S.] 400. It is true that this presumed authority has been said not to extend so far as to authorize the master to make a charter of the vessel at her home port. The Tribune [supra]. But if this distinction is sound, it does not affect the application of the principle to the present case, which is a contract to receive and carry cargo under the charge of her master, and not a letting of her out of his possession. If,

therefore, this had been a sea-going vessel, and the contract had related to a foreign voyage, the authorities would, in my opinion, leave no ground on which the claimant could contest the liability of the vessel, as well for the refusal to take on board the portion of cargo left behind as for the failure to deliver that which she carried out.

The controversy upon this point is no doubt induced by the peculiar character of the undertaking of the master and of the employment of the vessel. She was, it seems, engaged in the carriage of cargoes from the city of New York to landing places at the city of Brooklyn, running merely across the river or bay, and probably making no trips exceeding a mile in distance. The pleadings, however, present the facts that this was a contract for a maritime service, to be performed by a vessel upon tide waters, and that the master having taken on board a part of the cargo, refused to receive the rest, and also detains on board and refuses to deliver, according to the contract of affreightment, the portion taken on board.

The distance of transportation or the danger of navigation is nowhere declared an element essential to the liability of the vessel upon a contract of affreightment.

An undertaking to carry a cargo to ports or places up the Sound, or to Staten Island or Rockaway, would be subject to the same objection. Neither of these trips would be a foreign voyage. The decisions upon this subject rest upon principles which render them applicable as well to that species of carriage as to any other kind of coastwise navigation. In this court it has been repeatedly decided, that vessels engaged in navigating the Sound, or the tide waters of the harbor, or of the North river, have become subject to the rules of maritime laws, applicable to those engaged in voyages to other states or upon the high seas. This may be regarded as in effect determined, in the recent decision of the supreme court of the United States. Waring v. Clarke, 5 How. [46 U. S.] 441. And it is understood, that in so far as the jurisdiction in rem of the admiralty courts is concerned, that court also held, in the case of New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344 (argued at the same term, but ordered to re-argument upon the question of jurisdiction in personam,) that admiralty jurisdiction, in cases of contract, is not determined in this country as in England, by the mere matter of locality, but obtains wherever the subject-matter of the contract is of a maritime character.

Upon these grounds I think that the libel, upon its face, shows an adequate cause of action in rem. The demurrer is accordingly overruled, with costs.