## THE JOHN FRANCIS.

(District Court, S. D. Alabama. January 5, 1911.)

### No. 1,244.

1. MONEY RECEIVED (§ 1*)—NATURE OF OBLIGATION.

To render defendant liable in a suit for money had and received, plaintiff must show that defendant holds money which in equity and good conscience belongs to plaintiff.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. SHIPPING (§ 177*)—DEMURRAGE—PROTECTION OF CARGO.

On the arrival of a vessel, neither the consignee nor any person in his behalf or in that of the shippers appeared to accept delivery, whereupon the master, after waiting the expiration of the lay days provided in the contract, discharged the cargo on the customhouse wharf at the port of discharge, and, being unable to obtain a proper person to hold and protect the cargo for whom it might concern, the master remained ashore with his vessel 12 or more miles distant to perform that service. Held, that such service of the master did not entitle him to charge demurrage after the cargo had been unloaded nor sustain a charge for demurrage as compensation for a watchman, but at most only authorized a division between the owner of the cargo and the ship of the master's board bill while ashore together with the cost of cablegrams and protest fees.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 576; Dec. Dig. § 177.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

3. PAYMENT (§ 82*)—RECOVERY—VOLUNTARY PAYMENT.

The rule that money paid on account of an unlawful demand voluntarily and with knowledge of all the facts may not be recovered, unless paid under protest or to emancipate the property from an actual and existing duress imposed by the person to whom the money is paid, does not prevent a recovery of money paid on an illegal demand reluctantly by one without ability to regain possession of his property except by making such payment.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 254–266; Dec. Dig. § 82.*]

4. SHIPPING (§ 194*)—INTERPRETER'S COMPENSATION.

Where the services of an interpreter at the port of a vessel's discharge were necessary to aid a master in effecting a delivery of his cargo because the people with whom he had to deal could not speak or understand his language nor he theirs, the interpreter's compensation should be divided equally between the vessel and cargo.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 613–617; Dec. Dig. § 194.*]

In Admiralty. Libel by the Tropical Lumber Company against the schooner John Francis. Decree for libelant.

Pillans, Hanaw & Pillans, for libelant.
Gregory L. & H. T. Smith, for claimants.

TOULMIN, District Judge. This is a suit corresponding to an action for money had and received. It is to recover money alleged to have been unjustly and illegally demanded and received by the master

of the schooner Francis for demurrage and for other items claimed by him as expenses incurred at Tuxpan, Mexico, in and about the care and protection of a cargo of lumber belonging to libelants, and shipped by them under a contract of affreightment with said schooner to Tuxpan. The cargo was to be delivered at the port of discharge to a consignee on presentation of the bill of lading issued by the schooner for the cargo and payment of the freight. The consignee was duly notified of the arrival of the vessel and of her readiness to deliver the cargo on the terms stated. Waiting the expiration of the lay days provided for in the contract, and the consignee failing to appear and accept delivery of the cargo, it was discharged by the vessel onto the customhouse wharf at the port of discharge, where it remained from October 27, 1909, the day the discharge of the cargo was commenced, until November 19th, when the freight and all charges demanded by the master were paid, under protest, by libelant's agent or representative. In the meantime the master of the vessel was communicating with the consignee, and also with the libelants by cablegrams, in an effort to have the difficulties in the way of a prompt delivery of the cargo adjusted. It appears that the difficulties referred to did not arise from any fault of the vessel, but resulted from the fault, mistake, or mishap of the libelant. The master, however, refused to deliver the cargo except on payment of the demurrage and other charges demanded by him, which demand was finally acceded to, and the cargo of lumber duly delivered.

The demurrage demanded and paid the master was for 21 days at $30.80 a day, amounting to $646.80. I find that the vessel was entitled to 11 days' demurrage, amounting to $338.80, leaving in dispute $308 claimed as excess demurrage, and all the other items of the account paid, not including, of course, the freight.

To render the defendant liable in this suit, it is necessary for the libelant to show that the defendant holds money which in equity, justice, and law belongs to him.

It may not be disputed that the vessel was not entitled to demurrage after the cargo had been unladened and separated from the vessel. But it is contended on the part of the defense that inasmuch as neither the consignee, nor any person in his behalf or of that of the shippers, appeared to accept delivery of the cargo, it was the duty of the vessel to discharge and store, or place it in charge of a proper person to hold and protect for whom it may concern, subject to all lawful charges on it; and, inasmuch as no such person could be found at the port of discharge, that it was the duty of the master of the vessel himself to remain there and to perform this service. And it is urged that said excess demurrage, which is not due as such, should be allowed for said service. If the vessel had incurred any expense for storage of the cargo, or for watchmen, I think, under the circumstances of the case, such expense would have been chargeable to the cargo and should be allowed, but no such expense was claimed to have been incurred and none charged for. It might be considered as covered by the amount claimed and paid for as board for the master while he was performing such service as he, in effect, claims he did.

The defense further contends that the charges paid, and now

claimed and sued for, were voluntarily paid, and therefore cannot be recovered in this character of action, where the plaintiff must in equity and good conscience be entitled to recover.

The rule is that a party may not recover back the amount of an unlawful demand, when he has voluntarily paid the same, with full knowledge of all the facts and circumstances, unless the payment was made under protest, or "to emancipate the property from an actual and existing duress imposed by the party to whom the money is paid." But "the action to recover back may be maintained if the payment is caused, on the one part, by an illegal demand, and made, on the other, reluctantly, and without being able to regain possession of the property except by submitting to the payment." Knudsen-Ferguson Fruit Co. v. Chicago, St. P., M. & O. R. Co., 149 Fed. 973, 79 C. C. A. 483; Lamborn v. County Commissioners, 97 U. S. 181, 24 L. Ed. 926; Maxwell v. Griswold, 10 How. 256, 13 L. Ed. 405; 2 Encyc. Plg. & Prac. 1018–1020.

I find that the payments made and complained of were made under protest. Moreover, they were exacted by the master as a condition on which he would deliver the cargo.

I find that the excess demurrage demanded and paid was an illegal demand to the extent of $308, and that the libelant is in equity and good conscience entitled to recover it back.

I also am of opinion that libelant should not be charged with and required to pay the full amount of the interpreter's compensation. He was engaged in part on the business of the vessel, and in part on that of the cargo. His services seem to have been necessary because the people with whom the master had to deal could not speak or understand his language, nor he theirs. I think it equitable to divide this expense. I also think it equitable to divide the expense incurred for the master's board while ashore. His vessel was some miles distant—12 or more I believe—from where the cargo was stored. In order to give it proper care and protection, which he was undertaking to do, it was necessary for him to stay ashore, and to incur extra expense for maintenance. His services in looking to the care and protection of the cargo were in the interest of and for the benefit of the owners of the cargo, as well as in that of the vessel. I consider it just that the libelant should be charged with at least one-half of the master's board bill, and with the cost of the cablegrams and protest fees.

The judgment of the court, therefore, is that the libelant should have a decree for $359.90.