**BELVEDERE v. COMPANIA PLOMARI DE VAPORES, S. A.**
**THE HELEN.**
**No. 13127.**

United States Court of Appeals
Fifth Circuit.
May 16, 1951.

Robert H. Givens, Jr., Miami, Fla., for appellant.

No appearance entered for appellee.

Before HOLMES, BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a decree in admiralty dismissing a libel *in rem* against the Motorship "Helen," on the ground that the claims asserted are not actionable *in rem*.

In effect, the libel alleges that libellant and claimant entered into a charter party, whereby in consideration of $3550 paid in advance, the claimant as owner of the Motorship "Helen" chartered said vessel to libellant to transport bananas from Mexican ports to Florida ports, for which purpose the owner warranted her to be fit and seaworthy. Upon delivery of the vessel to the charterer (libellant here) libellant dispatched the vessel to Tecalutta, Mexico, to take on board a cargo of bananas and transport them to Miami, Florida. After a few hours at sea, the vessel developed engine trouble and was obliged to return to port for repairs. When these repairs had been made, the vessel again sailed for Mexico for the same purpose. After two days at sea, the vessel again developed engine trouble and was unable to complete the voyage. As a result of the two breakdowns, libellant alleges that he lost by spoilage, except for a small salvage value, two cargoes of bananas which had been cut from the trees and readied for loading in anticipation of the arrival of said vessel at Tecalutta. The libel seeks recovery of the sums advanced for charter hire, and the value of the bananas, less salvage.

The owner's defense, which the court below sustained, was that there was no contract of affreightment binding the vessel itself and subjecting it to a maritime lien enforceable by an action *in rem*.

The libel was properly dismissed. No cargo was ever loaded, nor was the vessel ever ready to receive cargo at the loading port, in accordance with the charter party. The contract of affreightment remained wholly executory.

■ Though there was some confusion on the subject in the earlier cases, it is now well settled admiralty doctrine that the "engagement of the vessel, or its hypothecation, as distinguished from the personal obligation of the owner, does not ensue upon the mere execution of the contract for transportation. Only upon the lading of the vessel or at least when she is ready to receive the cargo—when there is 'union of ship and cargo'—does the contract become the contract of the vessel and the right to the lien attach. No lien for breach of the contract to carry results from failure of the vessel to receive and load the cargo or a part of it." Krauss Bros. Lbr. Co. v. Dimon S.S. Corp., 290 U.S. 117, 54 S.Ct. 105, 106, 78 L.Ed. 216.

■■ In the early case of The Keokuk, 1870, 9 Wall., U.S., 517, 519, 19 L.Ed. 744, 745, the Supreme Court thus stated the same rule: "It is a principle of maritime law that the owner of a cargo has a lien on the vessel for any injury he may sustain by the fault of the vessel or the master, but the law creates no lien on a vessel as security for the performance of the contract to transport a cargo until some lawful contract of affreightment is made, and the cargo to which it relates has been delivered to the custody of the master or someone authorized to receive it." Contracts of affreightment by vessels are maritime in nature, and within admiralty jurisdiction, but such contracts give rise to no lien enforceable by action *in rem* against the vessel to secure payment of unearned charter hire or incidental damage where, as here, the contract remains wholly executory in performance. Todd Shipyards v. The City of Athens, D. C., 83 F.Supp. 67, 75, affirmed sub nom. Acker v. The City of Athens, 4 Cir., 177 F.2d 961. See also cases hereinafter cited.

■ On the claim for cargo loss, the present case is much like Osaka Shosen Kaisha v. Pacific Export Lbr. Co., 260 U.S. 490, 43 S.Ct. 172, 174, 67 L.Ed. 364, where part of the cargo had been loaded but the master refused to accept what the charterer considered a full cargo, to the alleged damage of the charterer, for which it libelled the vessel. It was there held that no maritime lien attached for the recovery of such damages. The court said: "The contract of affreightment itself creates no lien, and this court has consistently declared that the obligation between ship and cargo is mutual and reciprocal and does not attach until the cargo is on board or in the master's custody. We think * * * the lien of the cargo owner upon the ship is limited by the corresponding and reciprocal rights of the shipowner upon the cargo."

■ Loss of the two cargoes of bananas was one resulting from the vessel's failure to receive and load the cargo, which involves a simple breach of an executory contract of charter, for which libellant is not entitled to a maritime lien against the vessel, because the cargo never having been placed on board, it is not bound to the vessel, and the vessel itself can not be in default for the loss of goods never received on board. Osaka v. Pacific Export Lbr. Co., 260 U.S. 490, 498, 43 S.Ct. 172, 67 L. Ed. 364, 367; The Lady Franklin, 8 Wall., U.S., 325, 329, 19 L.Ed. 455, 457; The S. L. Watson, 1 Cir., 118 F. 945, 952; The Saturnus, 2 Cir., 250 F. 407, 3 A.L.R. 1187; Todd Shipyards v. The City of Athens, D.C., 83 F.Supp. 67, 75, affirmed sub nom. Acker v. The City of Athens, 177 F.2d 961; Silva v. Banker's Commercial Corp., 2 Cir., 163 F. 2d 602; Celio v. Jones, D.C., 38 F.Supp. 618, a case singularly in point.

The decree appealed from is affirmed, without prejudice to the right of appellant to proceed *in personam.*

Affirmed.