**PONTIN LIGHTERAGE COMPANY, Libellant,**

v.

**AMERICAN EXPORT LINES, Inc., Respondent.**

**No. 19328.**

United States District Court, E. D. New York.

Dec. 6, 1954.

Foley & Martin, New York City, for libellant. Christopher C. Heckman, Ned J. Parsekian, New York City, Advocates.

Haight, Deming, Gardner, Poor & Havens, New York City, for respondent, John Osnato, Jr., New York City, John J. Mulcahy, Jr., Brooklyn, N. Y., Advocates.

GALSTON, District Judge.

This libel sets up three causes of action:

The first alleges that the libellant was the operator of "stick lighters", which lighters are accompanied by men called captains who are employed by the libellant for an eight hour day, beginning at eight A. M. and ending at five P. M. It is alleged that between January 1, 1947 and January 12, 1948 these lighter captains, at the request of the respondent, performed certain work, labor and services after the eight hour day work performed by the captains for the libellant. The libel then says that the captain kept a record of his work time, and had it checked and certified by the respondent. Then occurs a critical allegation of the libel, that the libellant, for the convenience of the respondent, advanced "as is customary" the monies to pay such extra time; that the libellant rendered bills from time to time to the respondent for reimbursement of the monies so advanced. On January 24, 1948 respondent advised libellant by letter that it could not absorb said charges.

The second cause of action alleges that the bills described in the first cause of action were rendered, never disputed, and became accounts stated.

The third cause of action repeats the critical allegation set forth in the first cause of action, that the services for overtime hours were performed for the respondent in accordance "with the established practice, and pursuant to the custom of the trade in the port of New York and at respondent's request."

Respondent's answer is a denial of all critical allegations of the libel.

So this is a libel brought to recover $2,000, the sum alleged to be owed by respondent in connection with the overtime wages of the lighter captains.

Respondent questions the Admiralty jurisdiction of this court over an action for recovery based on unjust enrichment. The cited cases by respondent are, however, distinguishable, in that their subject matter, though stemming from a maritime transaction, were not of their own nature maritime. Here the subject matter is payment for the services of lighters and their crews, and is in essence a maritime issue.

United Transportation & Lighterage Company v. New York & Baltimore Transportation Line, 2 Cir., 185 F. 386, 391, cited by respondent, was an action by a lighterage company to recover for services. The respondent set up a counterclaim, and filed a cross libel alleging that prior to the dates mentioned in the libel, libellant had been performing lighterage services for respondent at exhorbitant and unlawful, if not fraudu-

lent, rates of pay. Such rates were alleged to be unlawful because they were agreed upon between an officer of libellant and an officer of respondent, who were father and son, the father being at the same time a stockholder and officer in both libellant and respondent, and the son being an officer and apparently a stockholder in libellant, and also an employee of respondent. The court, affirming a lower court dismissal of the cross-libel, held:

"The fundamental question is whether the general manager of the respondent corporation induced by his interest in the libelant corporation betrayed his trust. * * * this question is not maritime in its nature."

It is clear that the test the courts have applied is not the form of the action but the subject matter and questions involved. See Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 290 U.S. 117, 124, 54 S.Ct. 105, 78 L.Ed. 216. Under that test this action falls within the jurisdiction of the Admiralty Court.

Pontin is a firm which operates lighters in the port of New York. The lighters referred to in this case are the so-called "stick lighters", non-motive powered cargo vessels, each equipped with a powered winch. Each lighter carries a crew of one, referred to as the lighter captain.

Pontin contracts with various firms and individuals to carry cargo on its lighters from the shipper's piers to the piers or to the ships of the various export steamship lines in the harbor. The contract price is based on a rate fixed by tonnage or the number of units. Pontin picks up the cargo during the normal working day on the waterfront.

The lighter captains have a labor union contract with Pontin which provides that during all loading and unloading operations the lighter captain must be present. The contract provides also that the captain is to receive overtime pay for all work performed after five P.M. Even in the absence of a contract, the captains would be entitled to overtime, as in 1945 the courts ruled that these men are within the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., Anderson v. Manhattan Lighterage Corporation, 2 Cir., 148 F.2d 971.

If the shipper requests that his cargo be picked up after normal working hours, he pays the overtime pay of the lighter captain.

The time of delivery of the cargo to the steamship company is set by the steamship company and not by the lighterage firm. The time is communicated to the lighterage firm by means of a delivery permit.

The times which are designated for the arrival of a lighter at the docks and vessels are manifested in the delivery permit. In the present case the permits used incorporate the lighterage rules of the New York Produce Exchange.

When the lighters arrive at a pier when the ship is moved, the cost of unloading is borne by Pontin. If the lighter is unloaded at pierside, then Pontin hires its own longshoremen. If it is unloaded at shipside, Pontin must use the longshoremen already hired by the steamship line. If the unloading at shipside is carried on after five P.M., Pontin is billed only for the regular time pay of the longshoremen, and the steamship company pays the overtime differential. The cost of unloading is determined by tonnage.

If a lighter is held by a steamship company for more than forty-eight, seventy-two or ninety-six hours, depending upon the tonnage of the cargo on the lighter, the steamship company is required to pay the lighter owner demurrage. These demurrage payments are liquidated damages and are provided for in the rules of the Produce Exchange.

The actual time and sequence of the unloading is totally within the control of the steamship company. The determination as to when a specified lighter is to be unloaded directly in the ship's

hold, depends entirely on the ship's sailing schedule, the amount of cargo for the ship and the stowage plan. All of these matters are solely in the control of the steamship line.

During the loading process the lighter captain is responsible for the removal of the tarpaulin covering the cargo (this is done by use of the winch on the lighter,) the identification and location of cargo destined for various ports, and the movement of cargo on the deck of the lighter itself.

When a lighter captain works overtime, a representative of the steamship company, for the convenience of the libellant, certifies that the overtime was performed, by signing a blue slip entitled "Extra Labor * * * Overtime." These slips are issued by Pontin and are used to compute the overtime wages of the captains.

In 1947 Pontin began sending bills for this overtime to American Export Lines, based on the overtime indicated on the blue slips signed by respondent's representatives. During the period of 1947–1948, Pontin paid out $2,000 to its lighter captains on the basis of overtime computed from the blue slips. These bills were not paid by American Export, and Pontin now seeks recovery.

Pontin's general manager, Meyer, testified that as late as February, 1948, he did not know that American Export was protesting the bills. Respondent's general manager, Goodman, claimed that he had had a conversation with Meyer in which he had made it clear that American Export would not pay, but he did not seem clear or certain of the dates or approximate times of the conversations.

Since no contract existed between Pontin and American Export as to payments made to the lighter captains, and since no custom was proved to exist for the steamship lines either to pay or not to pay, the question remaining is whether, in the foregoing circumstances, Pontin is entitled to restitution of the funds paid to its captains.

As has been stated, the libel alleges that the lighter captains, at the request of respondent, *performed for the respondent* certain work, labor, and services after the eight hour day work, and that libellant advanced $2,000 to pay such extra time, and that respondent has not reimbursed libellant.

It is clear, regardless of how the message was phrased, that when a Pontin captain learned that his lighter was to be worked at night he stood by because his Union contract with Pontin so provided.

There is no claim by Pontin that American Export had no right to work the lighters after the normal eight hour day. In fact, the language of the Produce Exchange Rules in re demurrage charges is in terms of twenty-four hour days, and not eight hour working days. If American Export had the right to work the lighters at any time it saw fit, and it seems clear that it did, then Pontin cannot be heard to complain of the overtime payments, since it was they who signed the Union contract with the standby provision.

Moreover, the actual services performed by the captains were those owed by Pontin to the shippers. It was only the time of performance that was subject to change by American Export. The loading after five P.M. without doubt increased Pontin's cost of doing business, and was for the convenience of American Export Lines, but it does not follow that that constituted unjust enrichment.

Pontin admittedly was under a contract obligation to see that the goods reached the deck of the ship. It mattered not to the shipper when the actual loading and unloading took place, i. e., whether before eight A.M. or after five P.M. The shipper paid a flat rate, regardless of the time of delivery. It was Pontin who signed the contract with the labor union calling for the lighter captain to be present at all loading and unloading operations, and by doing so they incurred the additional cost as a

matter of law, which cannot be passed on to the steamship companies.

 Pontin further urges that respondent retained and never disputed the bills, and that they became an account stated. However, an account stated can determine only the amount of an indebtedness where a liability exists. Boyd v. Merz, 2 Cir., 45 F.2d 558; Stocking v. Seed Filter & Mfg. Co., Inc., 175 App.Div. 812, 162 N.Y.S. 451. Here no liability existed. The mere sending of bills and their retention cannot create a debt where there is no liability.

The libel will be dismissed.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.