**S/A INDUSTRIAS REUNIDAS F. MATARAZZO, Libellant,**

**v.**

**COMPANIA DE VAPORES SAN ANTONIO, S.A., and THE S. S. EURYSTHEUS, Claimant-Respondent.**

United States District Court
S. D. New York.

Dec. 13, 1954.

Joseph Cardillo, Jr., New York City, Curran Tiffany, New York City, of counsel, for respondents.

Purrington & McConnell, New York City, for libellant.

McGOHEY, District Judge.

The respondent excepts to the libel on two grounds: first, that the facts alleged "are insufficient to constitute a cause of action"; second, that they "do not constitute a cause of action within the admiralty and maritime jurisdiction of this court."

The libel alleges that, on January 18, 1952, the libellant and respondent en-

tered into a charter party, of which a copy is attached and incorporated, "pursuant to which the respondent agreed * * * to carry * * * a cargo of wheat * * * to Santos and Antonina, Brazil, and there deliver the same;" that the "charter party provided in part as follows:

"'Charters [sic] are to have the option of ordering vessel to discharge at Antonina, Brazil, as a second port of discharge, in which case, not more than 3,000 tons of 2240 lbs. is to be discharged at Antonina. Owners guarantee vessel's draft on arrival at Antonina will not exceed 18' on even keel. * * * and deliver the same, agreeable to Bills of Lading, on being paid freight, * * * as follows:

"'Twenty Five Dollars ($25.00) United States Currency per ton of 2240 lbs. if vessel loads Vancouver and discharges Santos only; or Twenty Five Dollars & Fifty Cents ($25.50) United States Currency per ton of 2240 lbs. on entire cargo if vessel loads Vancouver and discharges Santos and Antonina; or

"'Twenty Five Dollars & Fifty Cents ($25.50) United States Currency per ton of 2240 lbs. if vessel loads Puget Sound or Columbia River and discharges Santos only; or

"'Twenty Six Dollars ($26.00) United States Currency per ton of 2240 lbs. on entire cargo if vessel loads Puget Sound or Columbia River and discharges Santos and Antonina. Full freight to be prepaid in New York, in United States Currency, on telegraphic advice of signing Bills of Lading and is discountless and non-returnable vessel and/or cargo lost or not lost.'";

that wheat was loaded on March 25, 1952 and "upon the loading and signing of the bills of lading" of which copies are attached and incorporated, the libel-

lant paid freight at New York "in the sum of $260,000 on the basis of $26 per ton"; that upon arrival at Santos "libellant exercised its option under said charter party to have said wheat discharged at Santos and said entire cargo was there discharged"; that libellant thereupon demanded return of $5,000, "the difference between the freight paid and the freight earned" but respondent has refused to pay.

■ The libellant by the allegations construes the charter party as a contract to carry wheat to two ports at $26.00 per ton, subject to an option granted to libellant by the agreement, to take full delivery at the first port at $25.50 per ton. Accordingly it argues, this libel, like the one in Krauss Bros. Lumber Co. v. Dimon S. S. Corp.[1] pleads a cause of action within the Admiralty jurisdiction for breach of a maritime contract by exaction of a rate higher than that specified in the contract. However, libellant's construction of the charter party as set forth in paragraphs sixth, ninth, and eleventh is a mere conclusion, and so is not admitted by the exceptions. Furthermore its construction is directly contrary to the clear language of the incorporated charter party. The latter, as executed on January 18, 1952, provided that the respondent's vessel was to load a cargo of not more than 10,000 tons of wheat in bulk and "being so loaded shall therewith proceed to Santos, Brazil. Charters [sic] are to have the option of ordering vessel to discharge at Antonina, Brazil, as a second port of discharge, in which case, not more than 3000 tons * * * is to be discharged at Antonina * * * and deliver the same, agreeable to Bills of Lading, on being paid freight" at the rates quoted above. The agreement further required the "captain to call at Charterers' or their Agents' office, as requested, and sign Bills of Lading, as presented, without prejudice to this Charter Party." The bills of lading, which are also made part of the libel

1. 290 U.S. 117, 54 S.Ct. 105, 78 L.Ed. 216.

are designated No. 1 and No. 2 and are dated March 25, 1952. No. 1 covers 6,607,560 pounds of wheat "bound for Antonina, Brazil." No. 2 covers 15,792,440 pounds "bound for Santos, Brazil."

There is no option expressed in the agreement other than the one quoted above. And it is clear from the agreement as a whole that "Bill of Lading No. 1" constituted the "ordering" therein contemplated. Moreover the libellant undoubtedly so considered it because the freight was paid accordingly. Upon signing the bills of lading and receipt of the freight the respondent became obligated to make a voyage to and discharge at both Santos and Antonina. It is not alleged that the charter party was in any respect amended after March 25, neither is it alleged that the respondent defaulted on its obligation to deliver according to the bills of lading. On the contrary, it is clear from the libel that the libellant alone caused the voyage to terminate at Santos by purporting to exercise at that time "its option under said charter party." But the charter party clearly gave libellant only one option and that had already been exercised by the libellant on March 25 when by its bills of lading it ordered the vessel to discharge at Antonina and at Santos. The libellant's construction of the charter party under which it claims to have had an option, when the vessel reached Santos, to terminate the voyage there, can only be supported by reading into the agreement an entirely new and inconsistent provision: namely, a second option under which, after having exercised the only stated "option of ordering the vessel to discharge at Antonina" and thereby binding the respondent for a longer voyage and discharge at two ports, the libellant could, upon the vessel's arrival at the first port, rescind its exercise of the "first" option, terminate the voyage and require return of part of the freight voluntarily paid for the longer voyage and double discharge. Neither the libellant nor the Court is at liberty unilaterally to rewrite so radically the agreement.

The facts in Krauss Bros. Lumber Co. v. Dimon S. S. Corp. on which libellant relies are quite different from the facts here. There the parties agreed in the charter party that the rate should be the same as that charged by other ships, the amount of which, being then unknown, but to be ascertained later. The owner-respondent refused to return the difference between the freight collected and freight found actually to be due at the agreed rate after the amount therof was finally determined. The owner-respondent's challenge to the Admiralty jurisdiction was rejected on the ground that the libel charged a breach of the charter party by exaction of a rate higher than agreed to therein. Here however, when the libellant, on March 25, ordered discharge at both ports it exercised the only option granted to it in the charter party and made $26 per ton the "agreed" rate at which it then prepaid, as agreed, "discountless and non-returnable" freight of $260,000. Thus regardless of whatever other consequences may have followed from the respondent's refusal to return the $5,000 demanded by the libellant, that refusal was certainly no breach of this charter party.

Accordingly the libel fails to state a claim cognizable in Admiralty. As to the first exception, I do not now decide whether the allegations in this libel would support a claim in a civil action for restitution of all or some portion of the $5,000. Accordingly while the libel will be dismissed on the merits as not stating a claim in Admiralty, this will be without prejudice to any civil action by the libellant, if there be one available to it.

Settle order.