John R. PETERSON et al.

v.

S.S. WAHCONDAH et al.

No. 5417.

United States District Court
D. Louisiana.

April 30, 1963.

in issue are: 1) $500.00 attorney fees by J. B. Delaney & Co., a ship chandler; 2) $3,482.94 wages to libellants for wages subsequent to their seizure of the vessel; 3) $15,530.03 cash advancements, provisions and other accounts owed to intervenor Miami Marine Service, Inc., the present owner of the ship. The balance in the registry of the court is $4,852.89. Intervenor Miami Marine Service directs its objections to the other claims on the basis of their validity rather than their ranking.

Intervenor Delaney claims $500.00 for attorney fees primarily on equitable grounds. Intervenor's proctor concedes that there is no law specifically in his favor but argues strenuously that justice supports his claim. Subsequent to seizure by the crew, they found themselves unable to go ashore and without supplies and provisions. Delaney agreed to sell the supplies to the ship but was unsatisfied with the maritime lien granted to ship's suppliers. Before Delaney would sell, it required an order from this Court ranking its claim first and assuring its claims for attorney fees had priority. Four such orders were signed by this Court. Miami Marine Service makes no objection to Delaney's claim for provisions supplied subsequent to seizure of the ship, although there is some basis for urging that Delaney should have been paid by the crew out of their own pockets. The Astoria, 5 Cir., 281 F. 618. Miami Marine Services does object, however, to having Delaney's attorney paid out of whatever proceeds are available to pay Miami's claims which have, thus far, come last, and, in any event, will be far from satisfied. Delaney's proctor argues, with much persuasiveness, that without the orders granting attorney fees, the crew would not have been fed and maintained because no ship chandler would have provided the goods. Miami's proctor argues that the legal services were actually performed for the crew, not Delaney. Also he argues that Delaney sold these goods at a profit and acquired, for his protection, a maritime lien of the high-

F. F. Willoz, III, New Orleans, La., proctor for libellant and intervening libellants.

Samuel C. Gainsburgh, New Orleans, La., proctor for Miami Marine Agency, intervenor.

ELLIS, District Judge.

It would serve no purpose to elaborate on the tortuous path of this litigation since the questions here presented arise out of simple facts. Libellant crew members seized the SS WAHCONDAH for back wages and the ship has now been sold with the proceeds deposited in the registry of the Court. All claims, save the three here in issue, have been ranked and/or paid. The three claims

est rank. Lastly, Miami points out that Delaney concedes the absence of legal basis for such a claim.

It may be safely said that this question is not without complexity. On the one hand is the fact that this court signed four orders granting Delaney attorney fees with a preference over all other claims. These orders were premised on the representation that these men had no food or supplies and that Delaney would not provide them without such an order. Now it appears that Delaney has been fully paid for his goods and that the crew was able to leave the ship, and in fact did come ashore daily, after their seizure of the vessel. This Court is prompted by its wardship over seamen. The Court is also prompted by the fact that, in distributing funds, it should be controlled by rules of law. The Lottawanna, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654. This Court cannot say that, if a similar situation arose again and a ship's chandler withheld its services unless such orders were signed, this Court would not sign such orders. Seamen who claim to be without food present a compelling situation to any admiralty court and their necessitous circumstances may move a court to overlook the economic persuasion used by a third party to achieve rights and protection to which they are not entitled by law.

■ What then is the rule to be? Is it to be that a ship's chandler can, under threat of leaving seamen to starve, compel a Court to grant unknown legal privileges to it on an ad hoc basis and then collect on those privileges? Or is it to be that a Court is powerless to grant attorney fees by ex parte orders and the ship chandler can exercise his prerogative not to sell with the result that impoverished seamen aboard a seized vessel in a foreign port will be without provisions? If it were for this Court to say, it probably would hold that such a lien should exist where seamen were involved as were these in this case. It is, however, not for this Court to say. On what Benedict calls the "highest authority" 1 Benedict, Admiralty, Sec. 11, P. 18, is premised the rule that an Admiralty Court cannot create a maritime lien. The Lottawanna, supra. Maritime liens are stricti juris and cannot be extended argumentatively or by analogy or inference. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U.S. 490, 43 S.Ct. 172, 67 L.Ed. 364. Even when extended to meet unusual circumstances, the maritime lien must still be within accepted supporting principles. Krauss Bros. Lumber Co. v. Dimon S.S. Corp., 290 U.S. 117, 54 S.Ct. 105, 78 L.Ed. 216. Post-custodial claims have a tenuous right to lien status. The Resolute, 168 U.S. 437, 18 S.Ct. 112, 42 L.Ed. 533, and their payment, if at all, before pre-custodial claims is premised on "equity and good conscience." See generally Gilmore & Black, The Law of Admiralty, Ch. IX. The nature of maritime liens, even those firmly established by statute and time, require a service to the ship if premised on contract. Gilmore & Black, The Law of Admiralty, supra. This court can find no reasonable hypothesis to support a finding that these attorney fees were expended as a service to the ship. Moreover the claim does not relate to any established lien which would allow an extension to cover this unusual situation. There is simply no basis in law or equity for the recognition of privileged payment of this claim. Precisely speaking then, Miami Marine Service does not ask this Court to overrule or withdraw orders which it has issued but simply to concede its inability to make such orders and give effect to them. Addressed as it is to the jurisdiction of this Court, the point may be raised at any time. It is concluded that Delaney's claim for attorney fees must be denied.

■ The crew's claim for wages subsequent to seizure of the vessel is not based on their status as crewmen but as keepers of a vessel under seizure. There is no maritime lien for wages by crewmen subsequent to seizure. Putnam v. Lower, 9 Cir., 236 F.2d 561; Vlavianos v. The Cypress, 4 Cir., 171 F.2d 435,

cert. den. 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732; Irving Trust Co. v. The Steamscrew Golden Sail, D.C.Or., 197 F. Supp. 777. On the other hand, if the crew members perform necessary services to the vessel subsequent to seizure in a custodial capacity, they are entitled to wages. The Herbert L. Rawding, E.D.S.C., 55 F.Supp. 156. The question now becomes did the crew perform services necessary to the preservation of the vessel subsequent to seizure. The deposition of the master of the WAH-CONDAH indicates that the crew performed no necessary services for the ship whatever. Their sole services were standing watch over the generators which provided refrigeration for their food. They were free to come and go from ship to shore. The Master stated that he alone performed all conservative services subsequent to seizure by the crew. The Master is presently the sole custodian over the vessel. Subsequent to seizure some of the crew returned home and some remained aboard. The only concrete evidence in the record indicates that the crew performed no necessary custodial services for the ship. See Vlavianos v. The Cypress, supra, 171 F.2d at 438. Insofar as the ship and its liability to the crew is concerned, it appears that subsequent to their seizure of the ship the crew received free room and board until their repatriation at the expense of the ship.

Libellants argue that this Court should take judicial notice of the fact that one man cannot perform adequate custodial services aboard an ocean-going vessel at anchor in the Port of New Orleans, and that the libellants' services were necessary to preserve the ship. Such a request for judicial notice is, of course, refuted by the fact that the master is presently caring for the ship alone with the full knowledge of the authorities without complaint. Moreover, judicial knowledge in the admiralty has been limited to things in the records of the court, The Volsinio, E.D.N.Y., 32 F.2d 357; The Commack, S.D.Fla., 3 F.2d 704; The Henry S. Grove, W.D.

Wash., 283 F. 1019; The Seminole, E.D. N.Y., 42 F. 924; and publicly notorious and geographic facts. The Planter, 7 Pet. 324, 32 U.S. 324, 8 L.Ed. 700; The Apollon, 9 Wheat. 362, 22 U.S. 362, 6 L.Ed. 111; La Vengeance, 3 Dall. 297, 3 U.S. 297, 1 L.Ed. 610. No authority can be found for noticing the necessity urged by libellants. Even if there were, there is no basis for saying that such a necessity demanded the precise number of crewmen here involved. Finally, this Court surely cannot take judicial notice directly contrary to objective uncontroverted evidence in the record. The conclusion must be that the libellants have no lien for wages subsequent to seizure. Consequently, the balance of the proceeds of the sale must be paid to intervenor, Miami Marine Service.

So ordered.