## GALBAN LOBO TRADING COMPANY S/A v. THE DIPONEGARO et al.

### THE DJAKARTA LLOYD, Inc.

United States District Court
S. D. New York.
Nov. 9, 1951.

Bigham, Englar, Jones & Houston, New York City, William F. Andersen, New York City, of counsel, for libelant.

Kirlin, Campbell & Keating, New York City, Michael F. Whalen, New York City, of counsel, for respondent.

RYAN, District Judge.

Libelant, on September 12, 1951, filed a libel *in rem* against the freights of the S. S. Diponegaro, and in *personam* with clause of foreign attachment of the freights against the owner of the vessel, Indonesian Shipping Company. "Djakarta Lloyd, Inc." Libelant seeks recovery in the sum of $250,000 for damage to sugar cargo laden on the Diponegaro. It alleges the presence within this jurisdiction of $75,907.43 freights for the carriage of the cargo prepaid in New York by libelant to Shipowners Agency, Inc., as agent of Indonesian. These moneys, it is alleged, are still in the possession or under the control of Shipowners or Boise-Griffin Steamship Co., Inc., as agents. Both Shipowners and Boise-Griffin have answered the attachment: Shipowners that it has no funds in which respondent has an interest, Boise-Griffin that it has but $925.52. Indonesian has intervened in the attachment as owner of the vessel and her freights and has made claim to the funds which may have been arrested under process.

The suit comes on to be heard on application of the libelant for an order under Rule 37 of the Admiralty Rules of the Supreme Court, 28 U.S.C.A., requiring Shipowners and Boise-Griffin to bring the freights into court to answer the exigency of the suit, and appointing a commissioner

to hear and take testimony concerning the receipt and disposition of the $75,907.43, paid as freight by libelant. We also have before us the exceptions of respondent-claimant Indonesian to the libel, that libelant has no claim against the freights of the Diponegaro and that this court has no jurisdiction *in rem* against such freights on the facts pleaded.

The primary question presented is whether a cargo owner, in the absence of a specific contract so providing, has a maritime lien against moneys it has prepaid to the owner's agent for the transportation of the goods, for injury which it claims to have suffered as a result of loss or damage to the cargo. We hold that it has not.

The charter-party and the bill of lading for the cargo are pleaded in and are annexed to the libel. They contain no provision giving libelant a lien against the freights. The charter party does provide, however, that the shipowner has a lien upon the cargo for freight and all other charges which may become due under the charter. The bill of lading, in turn, provides that it is subject in all respects to the provisions of the charter party. Libelant must, therefore, rest entirely upon a right to assert a maritime lien not created by contract to maintain the libel *in rem* against the freights.

Search by counsel and the court has disclosed only two cases where it might be said that the right of a cargo damage claimant to assert a maritime lien against freights of the carrying vessel was enforced. The City of Athens, D.C.Md.1949, 83 F.Supp. 67, A.M.C. 572, and Freights of The Kate, D.C.S.D.N.Y.1894, 63 F. 707. We have not found in any text a single indication or even discussion that in a cargo damage claim there is a maritime lien against the freights which have been prepaid. In Freights of The Kate, supra, the maritime lien which the court recognized as attaching to the freights was created by contract of the owner hypothecating the freights. The court there wrote, 63 F. at page 712: "'No one has ever questioned,' says Butler, J. in The Mary Morgan, [D.C.] 28 F. [196] 199, 'that an express lien may exist

whenever the owner chooses to create it.'" The maritime nature of the lien sprang from the contract which created it, and the court observed that "accordingly maritime liens, resting wholly on express contract, have constantly been enforced." 63 F. at page 713. In the City of Athens, libelant, Todd Shipyards Corporation, brought suit *in rem* against the vessel and in personam against the shipowner with clause of foreign attachment, attaching the earned freight in the hands of an agent. No in rem proceeding was instituted against the freights. A reading of the opinion shows that the freights were treated only as attached property and not as property against which the cargo owner had a maritime lien *in rem*. Neither case is a precedent for the filing of the libel *in rem* against moneys prepaid as freights by a cargo owner for loss or damage to its cargo.

The maritime lien against the freights sought to be enforced here does not arise out of any contract, statute or common-law court. Enforcement of a maritime lien against freights for cargo loss or damage is neither mentioned nor provided for in the Admiralty Rules of the Supreme Court of the United States. See, Rules 13, 14, 15, 16 and 17, 28 U.S.C.A. The law of the sea has passed that period when even the most ingenious and resourceful of proctors might father new rights; it has long left behind the time for the development or belated recognition of maritime liens heretofore unknown and unsuspected. This is not an instance where "the right to the lien is not to be recognized and upheld, when within accepted supporting principles, merely because the circumstances * * * are unusual or infrequent." Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 1933, 290 U.S. 117, 125, 54 S.Ct. 105, 107, 78 L.Ed. 216. Claims for loss or damage to cargo are neither unusual nor infrequent. The rule that "the merchandise is bound or hypothecated to the vessel for freight and charges (unless released by the covenants of the charter party), and the vessel to the cargo", The Yankee Blade, 19 How. 82, 15 L.Ed. 554, 556, has never been extended to a holding that prepaid freights are likewise

subject to claims for cargo loss or damage when it is sought to enforce those claims *in rem*.

■■ We·recognize that libelant's right to a libel in rem against the vessel for cargo damage is of ancient origin and that maritime lien extends to the ship's hull, tackle, sails, rigging and equipment.

"Its conceptual origin lies in the personification of the ship itself. The ship as an entity, considered apart from the personal liability of the owner, becomes responsible for benefits conferred and damages committed by her." The City of Athens, supra, 83 F.Supp. 67, 74, A.M.C. at page 579.

But, this is far from holding that prepaid freights are to be considered a part of either the ship or the cargo so as to make them liable to *in rem* suit and attachment.

In The Neponset, D.C.Mass.1924, 300 F. 981, at page 989, A.M.C. 726, the court, quoting Mr. Justice Gray in The John G. Stevens, 170 U.S. 113, 122, 18 S.Ct. 544, 42 L.Ed. 969, wrote: "The offending ship is considered as herself the wrongdoer, and as herself bound to make compensation for the wrong done."

And, the court later noted that "freight is regarded as belonging to the vessel, and the lien attaches to it as if it were a part of the ship, like the tackle." 300 F. at page 990.

If, then, a maritime lien in favor of cargo attaches to the freight as part of the ship, the measure of the lien is the extent of the lien on the ship itself. But here there was in fact no lien for freights for they had been prepaid to the owner's agent, and had become a fund separate and apart from the ship itself. It is to this fund that libelant seeks to assert a maritime "privilege" or lien. To sustain libelant's right to such a lien would be to grant it a "'jus in re' without actual possession or any right of possession" which would accompany the property (here, the moneys) even as against those who innocently received them. The Yankee Blade, supra, 19 How. 89.

"Logic demands that where freights are earned by a vessel, and where no question of fraud is involved, they at some time be considered as personal property of the owner not subject to a maritime lien or an attachment in a proceeding in rem. In other words, there must at some point be a separation of the freights from the personage of the ship." The Perla, D.C., 94 F.Supp. 111–112.

In The Perla it was held that "that time would be at the end of each voyage when the ship 'turns over' the surplus of freights to the owner." 94 F.Supp. at pages 112–113. But a reading of that case does not disclose whether the freights on the last voyage of the ship were prepaid as in the suit before us.

As to freights paid in advance, Dr. Lushington in The Dowthorpe, 1843, 2 W.Rob. 73, 166 Eng.Rep. 682, holding freights liable for pilotage and wages observed that "the exertions of the pilot and seamen contribute equally to the preservation of the ship and freight," (p. 687) but, he continued, "Cases may arise in which the freight may have been paid beforehand, and if so, that circumstance might create a difference. There may also be other cases of exception, and it is to prevent misunderstanding hereafter that I am desirous expressly to guard myself from being supposed to say that the rule will apply in all cases."

Although the latter part of this quotation is a dictum, we take it as an indication that this learned authority on admiralty was of the opinion that a maritime lien could not be asserted against prepaid freights.

Mr. Justice Holmes wrote in United States v. Freights, etc., of the Mount Shasta, 1926, 274 U.S. 466, at page 470, 47 S.Ct. 666, at page 667, 71 L.Ed. 1156: "How far in fact the admiralty has carried its proceeding *in rem* is a question of tradition. We are not disposed to disturb what we take to have been the understanding of the Circuit Courts for a good many years, and what the District court assumed." Nor, are we disposed to create new remedies.

We hold, therefore, that the exceptions of Indonesian to the libel *in rem* filed against the freights must be sustained.

■ We come then to libelant's application for the appointment of a commissioner to hear and receive proof concerning the receipt and disposition of the freights. This procedure is applicable to both proceedings *in rem* and *in personam* with clause of foreign attachment. Rule 19, Admiralty Rules of this court. Although exceptions to the libel *in rem* against the freights have been sustained, the libel *in personam* with clause of foreign attachment filed against Indonesian as owner remains. Libelant's application is made necessary by the denial of Shipowners that it has funds of respondent and by that of Boise-Griffin that it has funds other than the $925.52. It further appears that respondent has no other assets here which could be subjected to libelant's claim. Libelant will be granted an order directing the payment into court of the funds levied on by the marshal on September 12, 1951, and appointing a commissioner to take proof and inquire if the garnishees do in fact have funds belonging to respondent-claimant, specifically the sum of $75,907.43 freights of the S. S. Diponegaro paid to Shipowners Agency, Inc.