Frank CAPARELLI et al., Plaintiffs,

and

Robert L. Jones et al., and James J. Hayes et al., Plaintiffs-Intervenors,

v.

The PROCEEDS OF FREIGHT, Pan American Tankers Corporation and Whitehall Navigation Corporation, Pursuant to Charter Parties with the Government of South Vietnam for Transport of Cargo Aboard the S. S. CORTLAND, S. S. BOWLING GREEN and S. S. WHITEHALL, Defendants.

NATIONAL BANK OF NORTH AMERICA, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

No. 71 Civ. 4454.

United States District Court, S. D. New York.

March 25, 1974.

See also, D.C., 390 F.Supp. 1351.

Schulman, Abarbanel & Schlesinger, New York City, for plaintiffs; David Jaffe, New York City, of counsel.

Zwerling & Zwerling, New York City, for plaintiffs-intervenors Jones, and others; Martin Kent, New York City, of counsel.

Markowitz & Glanstein, New York City, for plaintiffs-intervenors Hayes, and others; Joel C. Glanstein, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant and third-party plaintiff National Bank of North America; Woodson D. Scott, New York City, of counsel.

Cole & Deitz, New York City, Gen. Counsel for National Bank of North America; Edward N. Meyer, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. N. Y., for the Government; Daniel H. Murphy, II, Asst. U. S. Atty., of counsel.

## OPINION

BONSAL, District Judge.

This is an action in admiralty for recovery of mariners' wages. Plaintiffs and plaintiffs-intervenors sue in rem against "proceeds of freight" and in personam against defendant National Bank of North America ("National"). The "proceeds of freight" are alleged to be within this district in the possession or under the control of National.

Plaintiffs are unlicensed seamen who in 1967 and 1968 allegedly were employed aboard the S.S. BOWLING GREEN, the S.S. CORTLAND, and the S.S. WHITEHALL. Plaintiffs-intervenors, the Trustees of the Masters, Mates & Pilots Pension & Welfare Plan ("Masters Trustees") and the Trustees of the Marine Engineers Beneficial Association Health & Welfare Plan ("MEBA Trustees"), are the assignees of the wage claims of the licensed deck officers and licensed marine engineers, respectively,

who in 1967 and 1968 allegedly were employed aboard the same three vessels. Defendant National is the holder of a first preferred ship mortgage on the S.S. BOWLING GREEN, S.S. CORTLAND and S.S. WHITEHALL. The Pan American Tankers Corporation ("Pan American") was the owner and operator of the S.S. BOWLING GREEN and S.S. CORTLAND, and the Whitehall Navigation Corporation ("Whitehall") was the owner and operator of the S.S. WHITEHALL. Defendant National filed a "third party complaint" against the United States seeking a judgment declaring that the United States has no claim against certain funds in the possession of National and enjoining the United States from levying on or asserting any claim to recover from these funds that portion of the plaintiffs' gross wages representing federal taxes.

Plaintiffs and plaintiffs-intervenors move pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims for an order requiring National to pay into court certain "proceeds of freight" resulting from an arbitration award and demurrage claims, and for summary judgment in their favor pursuant to Fed.R.Civ. P. 56. In addition, plaintiffs and plaintiffs-intervenors move for an order granting them leave to amend their complaint to state a cause of action against National for penalty wages under 46 U.S.C. § 596.

*Facts*

In 1968, the vessels S.S. BOWLING GREEN, S.S. CORTLAND, and S.S. WHITEHALL were transporting cement from Taiwan to Saigon under a contract with the Republic of Vietnam. By letter of May 14, 1968, the Republic of Vietnam repudiated the contract. Following the repudiation, the vessels remained at Saigon withholding further discharge of cargoes, and on August 5, 1968 the crews were repatriated by the U.S. Government. The vessels remained under the protective custody of the U.S. Embassy,[1] and the cargoes were removed by the Receivers.

Pan American and Whitehall subsequently commenced an arbitration proceeding against the Republic of Vietnam and were awarded $406,343.40. Prior to the arbitration award, $82,811.45 was paid on behalf of the Republic of Vietnam to Pan American and Whitehall on account of demurrage claims,[2] making a total of $489,154.85 received by Pan American and Whitehall. The arbitration award of $406,343.40 was made up as follows:

| | |
|---|---|
| "Lay-up expense" for the S.S. BOWLING GREEN, May 26, 1968 to July 3, 1968, plus interest | $116,298.90 |
| "Lay-up expense" for the S.S. WHITEHALL, June 4, 1968 to July 3, 1968, plus interest | 89,460.69 |
| "Lay-up expense" for the S.S. CORTLAND, June 4, 1968 to July 3, 1968, plus interest | 89,460.69 |
| "Owners' Agent's Travel Expenses," plus interest | 6,309.57 |
| "Demurrage (net)," plus interest | 102,125.35 |
| "Freight (net)," plus interest | 1,723.70 |
| "Mats, Dunnage and Separations," plus interest | 964.50 |
| | $406,343.40 |

It appears that after the deduction of various expenses and attorneys' fees,

1. According to the affidavit of Woodson D. Scott, counsel for National, the vessels are still in Saigon.

2. The opinion of the majority of the arbitration panel indicates that Pan American and Whitehall claimed demurrage accruing on the first three voyages in the amount of $186,784.38, as follows:

| | |
|---|---|
| S.S. BOWLING GREEN | $100,372.00 |
| S.S. CORTLAND | 27,464.68 |
| S.S. WHITEHALL | 58,947.70 |
| | $186,784.38 |

The charterers were credited with dispatch earned of $13,581.06, leaving $173,203.32 outstanding on demurrage claims. A payment on account of this demurrage was made on August 26, 1969 in the amount of $82,811.45. The remaining sum of $90,391.-87, plus interest, was included in the arbitration award to Pan American and Whitehall.

National received from Pan American and Whitehall a total of $418,911.85,[3] as mortgagee of the three vessels.

Plaintiffs seamen allege gross wages in the amount of $285,189.03, plus interest. They have assigned $103,915.63 of this amount to the Internal Revenue Service, as agent for the United States, to cover withholding and social security taxes.

Plaintiffs-intervenors, Masters Trustees and MEBA Trustees, allege gross wages in the amounts of $145,124.74 and $175,686.93, respectively, plus interest. The claims of the plaintiffs and plaintiffs-intervenors total $606,000.70, plus interest.

*Plaintiffs and Plaintiffs-Intervenors' Motions pursuant to Supplemental Rule C(3)*

Plaintiffs and plaintiffs-intervenors, asserting maritime liens for wages on the $418,911.85 received by National, seek an order requiring that this amount, plus interest, be deposited in court to be applied to their claims.

Rule C(3) of the Supplemental Rules for Certain Admirality Claims pertains to an *in rem* action brought to enforce "any maritime lien" and provides in relevant part:

"If the property that is the subject of the action consists in whole or in part of freight . . . or other intangible property, the clerk shall issue a summons directing any person having control of the funds to show cause why they should not be paid into court to abide the judgment."

The threshold issue, therefore, is whether a mariner has a maritime lien arising from nonpayment of wages on all or any part of the $418,911.85 received by National, as mortgagee, from Pan American and Whitehall.

National does not dispute that mariners are entitled to a lien for wages on earned freight, *see* 1 E. Benedict, The Law of American Admiralty § 80, at 249 (6th ed. 1940); Sheppard v. Taylor, 30 U.S. (5 Pet.) 675, 8 L.Ed. 269 (1831); Peterson v. S.S. Wahcondah, 331 F.2d 44 (5th Cir. 1964), and concedes that a mariner can proceed to enforce his lien against that portion of the arbitration award representing freight. Plaintiffs and plaintiffs-intervenors do not seriously contend that a mariner is entitled to a lien for wages on that portion of the arbitration award representing "Owners' Agent's Travel Expenses," and "Mats, Dunnage and Separations."

The crucial dispute between the parties is whether a mariner is entitled to a lien on monies received by National representing demurrage and "lay-up expense." Neither plaintiffs nor plaintiffs-intervenors have cited a case which holds directly that a mariner has a lien for wages on demurrage or monies for "lay-up expense." However, plaintiffs and plaintiffs-intervenors contend that these items represent "freight" on which a mariner's lien for wages subsists. National disagrees.

3. According to National, the $418,911.45 is calculated as follows:

| | | |
|---|---|---|
| Arbitration Award | $406,343.40 | |
| Arbitrators' fees | −15,000.00 | |
| Total received by National from Arbitration Award | | $391,343.40 |
| Monies received by Pan American and Whitehall on account of demurrage claims | $ 82,811.45 | |
| Amount deducted for attorneys' fees | −55,243.00 | |
| Total received by National from additional demurrage monies | | 27,568.45 |
| Total received by National from Arbitration Award and additional demurrage monies | | $418,911.85 |

Freight is defined as "the compensation which the shipowner is to receive for carrying the goods." G. Gilmore and C. Black, The Law of Admiralty, § 5–1, at 221. In *Sheppard, supra,* 30 U.S. at 711, the Supreme Court explained that under the principles of maritime law, the relation between freight and wages creates a maritime lien on freight in favor of a mariner whose wages have not been paid:

> "freight being the earnings of the ship in the course of the voyage, it is the natural fund out of which the wages are contemplated to be paid; for though the ship is bound by the lien of wages, the freight is relied on as the fund to discharge it, and is also relied on by the master to discharge his personal responsibility. We think, then, that this relation between the freight and wages does, by the principles of the maritime law, create a claim or privilege in favour of the seamen, to proceed against it under the circumstances of the present case."

The Court believes that the same lien creating "relation" exists with respect to demurrage and the monies for "lay-up expense." Moreover, although freight is comprised of more elements than wages, a mariner's wage lien extends to the entire freight. Similarly, therefore, this Court holds that the wage lien asserted in the present case extends to the entire amount of the demurrage and "lay-up expense" monies now in the possession of National.

Demurrage is defined as

> "an allowance for the detention of a vessel in loading or unloading beyond the time allowed for the purpose in the charter party or bill of lading. It is in the nature of extended freight and is intended as a compensation to the vessel for the freight she might have earned during the period of detention." 1 E. Benedict, The Law of American Admiralty, § 105, at 313

(6th ed. 1940). *See* Pennsylvania Railroad Co. v. Moore-McCormack Lines, Inc., 370 F.2d 430, 432 (2d Cir. 1966).

As thus defined, demurrage accrues when a vessel is detained and unable to earn freight. Since no freight is being earned, demurrage must take the place of freight as a source for the payment of wages. As "extended freight," demurrage is thus part of "the natural fund out of which the wages are contemplated to be paid." *Sheppard, supra,* 30 U.S. at 711. Under the holding of *Sheppard, supra* this relation between demurrage and wages creates a maritime lien on demurrage in favor of a mariner whose wages have not been paid. A mariner may therefore proceed against demurrage to enforce his lien for wages.

"Lay-up expense" was defined by a majority of the arbitrators as "the net loss Owners would have suffered had they discharged the vessels immediately and removed them to a nearby port awaiting the outcome of substitute local business." "Lay-up expense" was awarded through July 3, 1968 only, because the panel majority reasoned that in view of the circumstances, the "Owners should have then concluded a return to the United States of their vessels was mandatory." It follows that "lay-up expense" was awarded for a limited period in which the vessels would have been unable to earn any freight, taking into account the wages that would have been incurred by the vessels during the limited lay-up period and providing for their payment. A mariner may therefore proceed against the "lay-up expense" monies to enforce his lien for wages.

Plaintiffs and plaintiffs-intervenors are entitled to a sequestration order pursuant to Supplemental Admiralty Rule C(3). National is a depository of funds of this Court.[4] Therefore, pending final determination of the rights of the parties, National will set up a special interest bearing account in its Bank,

4. See list of "Depositories for Moneys of Estates under the Bankruptcy Act (Revised December 1, 1972)."

and deposit therein the sum of $411,912.12,[5] plus interest on $384,343.67 from the date National first received the arbitration award monies, and interest on $27,568.45 from the date National first received the $27,568.45, computed at National's prime loan rate for such period.

*Motions for Summary Judgment*

██ The pleadings have raised factual issues including but not necessarily limited to whether plaintiffs and the assignors of plaintiffs-intervenors were employed on the S.S. BOWLING GREEN, S.S. CORTLAND or S.S. WHITEHALL; whether they performed all services required of them; whether they have demanded and been refused their wages; and the amount of wages, if any, due them. To show that there is no genuine issue as to any material fact, plaintiffs have submitted affidavits of David Jaffe, their attorney, unsworn and uncertified copies of miscellaneous documents, and unsworn and uncertified copies of documents entitled "Wage Voucher" and documents entitled "Loan and Power of Attorney." Plaintiffs-intervenors, Masters' Trustees, have submitted the affidavit of Martin Kent, their attorney, the affidavit of Theodore Passaris, master of the S.S. WHITEHALL during the disputed period, and unsworn and uncertified copies of documents entitled "Wage Sub-Voucher" and documents which appear to be wage claim assignments. Plaintiffs-intervenors, MEBA Trustees, have submitted the affidavit of Joel C. Glanstein, their attorney, and unsworn and uncertified copies of documents entitled "Wage Sub-Voucher" and documents entitled "Assignment and Power of Attorney."

Fed.R.Civ.P. 56(e) provides in relevant part:

> "Supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Sworn* or *certified* copies of all papers . . . referred to in an affidavit shall be attached thereto or served therewith." (Emphasis added.)

The Court of Appeals has held that:

> "[u]nless there are very unusual circumstances to justify it, the evidentiary material offered in support of a final judgment should consist of material within the personal knowledge of the affiant and not hearsay, and attached exhibits should be accompanied by sworn statements of the circumstances that would qualify them as full exhibits." Oceanic Trading Corp.

---

5. This figure is computed by allocating the $15,000 arbitrators' fee pro rata over each element of the arbitration award:

Arbitrators' Fees/Arbitration Award = $15,000/$406,343.40 = .0369

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---:|
| Portion of Arbitration Award representing "Lay-up expense," Demurrage and Freight | $399,069.33 |
| Deduction for Arbitrators' Fees .0369 × $399,069.33 = | 14,725.66 |
| "Lay-up expense," Demurrage and Freight Monies from Arbitration Award received by National after deduction of Arbitrators' Fees | $384,343.67 |
| Demurrage Monies received by National not included in Arbitration Award | 27,568.45 |
| Total amount of "Lay-up expense," Demurrage and Freight Monies received by National | $411,912.12 |

v. Vessel Diana, 423 F.2d 1, 4 (2d Cir. 1970).

The only evidentiary material submitted by the moving parties which meets the above standards is the affidavit of Passaris, which by itself is insufficient to support summary judgment in favor of any party. Since the moving parties have presented no "very unusual circumstances" which justify a relaxation of the above standards, their motions for summary judgment are denied. However, the Court will appreciate receiving suggestions from counsel within 10 days, as to how the claims to the fund can be heard and disposed of most expeditiously.

*Plaintiffs' and Plaintiffs-Intervenors' Motions to Amend Their Complaints*

Plaintiffs and plaintiffs-intervenors move for an order granting them leave to amend their complaints to state a cause of action for penalty wages under 46 U.S.C. § 596. Section 596 provides in relevant part:

> "Every *master* or *owner* who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; . . . ." (Emphasis added.)

National was not a master or owner, but a mortgagee. Plaintiffs concede that they have found no case in which liability for double wages has been applied to a mortgagee. Since there appears no basis on which to hold National, as holder of a first preferred mortgage on each of the vessels, liable for penalty wages under 46 U.S.C. § 596, plaintiffs' and plaintiffs-intervenors' motions to amend their complaints are denied.

Settle order on notice.