**Decided November 15, 1983**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

SAIPAN CONSTRUCTION AND ) CIVIL ACTION NO. 82-0046
SALVAGE, INC. )
                      )
        Plaintiff,    )
                      )
      vs.             )                    DECISION
                      )
M/V "SAIPAN LADY", her )
tackle, engine and appurte- )
nances, in rem,       )
                      )
        Defendant.    )
_____)

## DECISION

The facts of this case comprise another chapter in the troubled saga of the M/V Saipan Lady, a 115 foot motorized ketch of wooden construction weighing approximately 85 tons.[1]

— — — — — — — — —

[1] The Court adopts, for the purposes of this motion, the facts alleged in the pleadings of this case as the parties differ not as to the material facts, but as to their legal implications. Additionally, the Court takes judicial notice of the proceedings of the following related cases: Falstrom Pty. Ltd. et. al. v. Arthur Maxwell Thompson, Civil No. 81-0041 (D.N.M.I. default entered Sept. 18, 1981)(hereinafter referred to as Falstrom v. Thompson or Falstrom) and Micronesian Insurance Underwriters, In v. Saipan Sailing Cruises, Inc. and "Saipan Lady", Civil No. 81-0066 (D.N.M.I. default entered Jan. 15, 1982)(hereinafter referred to as MIU v. Saipan Sailing Cruises, Inc.). The Court may take judicial notice of its own records. Shuttlesworth v. City of Birmingham, 394 U.S. 156, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Saxton v. McDonnell Douglas Aircraft Co., 428 F.Supp. 1047 (N.D.Cal. 1977); 9 Wright and Miller, Federal Practice and Procedure § 2410 (1971).

The ship was purchased in 1981 as part of a business venture wherein the ship would be used as a floating restaurant operating in and around the waters of Saipan. For various reasons, the venture failed. In a contract action by Falstrom, an investor of the ill-fated enterprise, against, among others, Saipan Sailing Cruises (SSC), the alleged alter ego of a co-venturer, the Court ordered the public sale of the M/V Saipan Lady, owned by defendant therein, to satisfy a default judgment in favor of Falstrom. (Falstrom v. Thompson, supra, n.1.)

On November 15, 1981, the ship was sold for one dollar ($1.00) to Falstrom, an amount insufficient to satisfy Falstrom's judgment. This execution sale was not then, and is not now, challenged.

The misfortunes of the M/V Saipan Lady continued into November of 1981 when Typhoon Hazen drove the vessel aground in the shallow water off Micro Beach, Saipan. This case concerns the subsequent salvage operations performed by the plaintiff herein.

Plaintiff contends that, in July 1982, it commenced operations to relocate the ship in more secure and deeper waters. Using heavy equipment and wire cables, plaintiff moved the ship into Smiling Harbor. Plaintiff alleges that it subsequently secured and maintained the ship and commenced repairs.[2]

---

[2] The M/V Saipan Lady, now in the custody of plaintiff as substitute custodian, has since been moved, upon stipulation of the parties, to the Seaplane Ramp, Lower Base, Saipan.

In this action, plaintiff seeks compensation in the amount of $25,000 for its salvage operations. Pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims, plaintiff had the M/V Saipan Lady arrested on August 24, 1982 and for a period of three weeks thereafter had published a notice of the vessel's arrest and of the impending action.

Several parties entered the action at this time, filing claims against the vessel as required under Supplemental Rule C(6). Micronesian Insurance Underwriters, Inc. (MIU) is one of these claimants, filing a claim on September 13, 1982. MIU bases its claim on a default judgment entered by this Court against SSC and the M/V Saipan Lady (MIU v. Saipan Sailing Cruises, supra, n.1). The suit involved the collection of unpaid insurance premiums on a policy issued on the M/V Saipan Lady to SSC. In the matter now before the Court, MIU lays claim to the vessel by way of a maritime lien or a judgment lien, either of which, MIU asserts, would entitle it to an interest in the proceeds of any future judicial sale of the M/V Saipan Lady.

On April 22, 1983, plaintiff filed a motion to dismiss MIU's claim arguing that unpaid insurance premiums do not give rise to a maritime lien and alternatively, that the judicial sale ordered in Falstrom v. Thompson, extinguished all prior liens on the vessel. Plaintiff subsequently withdrew its motion.

On October 18, 1983, plaintiff renewed its motion which was heard on October 28, 1983.

///

An initial matter is in need of resolution before the merits of MIU's claim are addressed. Plaintiff asserts that the sale of the M/V Saipan Lady in the _Falstrom_ case was a maritime sale, thereby extinguishing all prior claims against the ship. While it is true that a sale of a marine vessel by a Court proceeding _in rem_ and properly exercising maritime jurisdiction frees the vessel from all prior liens,[3] the same is not true of an action _in personam_ wherein the ship is merely attached as security for the personal judgment. In such a case, the title to the vessel is no better than similar title to any other species of property and does not possess the particular maritime virtue of being "good against the world." 1 Benedict on Admiralty (7th Ed. 1981), § 125; _The Knapp, Stout and Co. Company v. McCaffrey_, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed.2d 921 (1900). The _Falstrom_ plaintiffs invoked the local jurisdiction of the Court, and did not proceed _in rem_ against the M/V Saipan Lady; rather, the vessel was attached pursuant to a duly authorized writ of attachment and sold pursuant to a writ of execution. Therefore, the purchaser of the vessel, and his subsequent assignees, took the ship subject to prior liens in accordance with the applicable laws on execution sales. Does MIU have a surviving claim?

Maritime liens are statutorily created under the Federal Maritime Lien Act (46 U.S.C.A. 971, _et. seq._). Section 971, defines the sources of maritime liens:

– – – – – – – – –

[3] _See_ 2 Benedict on Admiralty § 64 (7th Ed. 1981); _Morrisey v. SS A and J Faith_, 238 F.Supp. 877 (N.D. Ohio 1964).

> Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

MIU asserts that a lien for unpaid insurance premiums can be created under the "necessaries" language of section 971. However, it has been consistently held that, under principles of admiralty law and under the Maritime Lien Act, claims of an insurer for unpaid premiums do not give rise to a maritime lien. The Prilla, 21 F.Supp. 383, 385 (D.Mass. 1937); Grow v. Steel Gas Screw Loraine K, 310 F.2d 547, 549 (6th Cir. 1962); West of England Ship Owners v. Patriarch Steamship Co., 491 F.Supp. 539, 544 (D.Mass. 1980); 2 Benedict on Admiralty § 37 (7th Ed. 1981). Therefore, MIU's contract for insurance alone gives MIU no interest in the vessel.

What then, if any, is MIU's interest in the M/V Saipan Lady? Any interest which MIU may now claim could only have arisen from the proceedings and judgment in MIU v. Saipan Sailing Cruises, supra. In that case, MIU sought to invoke the admiralty jurisdiction of this Court to proceed in rem against the ship; in addition, MIU included a local action against SSC for breach of contract. The vessel was ordered arrested on October 27, 1981.[4/]

- - - - - - - - -

[4/]Although no return on the arrest warrant is evidenced on the face of the record, the outcome of this motion would not be different should the Court question the validity of the arrest; therefore, it is assumed for this motion that the ship was properly arrested

MIU obtained a default judgment which is now relied upon to support a claim on the M/V Saipan Lady. Upon closer examination of MIU v. Saipan Sailing Cruises, the Court now notes a serious jurisdictional defect; MIU's attempt to invoke the admiralty jurisdiction was flawed.

An in rem proceeding against a ship is the distinctive remedy of an admiralty court and is administered exclusively by a federal court. 1 Benedict on Admiralty (7th Ed. 1981) § 124. A plaintiff may only proceed in rem in federal court either where the action is to enforce a maritime lien or where otherwise so allowed by a statute of the United States. Supplemental Rules C(1). As the Court herein decides that MIU's claim for insurance premiums did not create a maritime lien and as the Court is unaware of a federal statute which otherwise authorizes the action, it necessarily follows that the Court in MIU v. Saipan Sailing Cruises did not have subject matter jurisdiction over the in rem claim against the M/V Saipan Lady. The judgment of a court acting without proper jurisdiction is a nullity; it is not voidable, but simply void. Elliot v. Pearsol, 1 Pet. 328, 7 L.Ed.164 (1828); In Re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed.402 (1887); Vallely v. Northern Fire and Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297 (1920); Harris v. Illinois-California Express, 687 F.2d 1361 (9th Cir. 1982). Therefore, MIU does not hold a valid judgment against the M/V Saipan Lady.

While the Court was acting without proper federal jurisdiction, it appears on the face of the record to have had in

personam jurisdiction over SSC.  Therefore, MIU held a valid attachment writ on SSC's interests in the vessel.

A writ of attachment secures only that interest in the property to which the debtor has a legal claim.  Hetrick v. Paris Jet, Inc., 64 Cal.App. 3d 158, 134 Cal.Rptr. 285 (Ct.App. 1976); Richion v. Mahoney, 62 Cal.App. 3d 603, 133 Cal.Rptr. 262 (Ct.App. 1976); Bergin v. Waterson, 279 F.2d 193 (10th Cir. 1960); The Belfast v. Boon (7 Wall 624), 19 L.Ed. 266, 272 (1868); Kinnison v. Guaranty Liquidating Co., 115 P.2d 450, 454 (Cal. 1981); MIU, then, attached only SSC's interest in the vessel.  SSC's title, at the time of MIU's attachment, was subject to several maritime claims (the validity of which remain to be determined) as well as prior attachment liens.  Dispositive, for the purposes of this motion, is the attachment lien of Falstrom in Falstrom v. Thompson.

Falstrom had the ship arrested on July 23, 1983, three months prior to MIU's order of arrest; therefore, MIU's interest was subject to the full satisfaction of Falstrom's claim.  Falstrom subsequently obtained a default judgment against SSC and had the ship sold to satisfy its judgment.  Upon sale of the vessel, SSC lost its interest in the ship and could lay claim only to these proceeds which exceeded Falstrom's claim.  Since the sale proceeds did not satisfy Falstrom's personal judgment, SSC's interest in the ship and the proceeds was extinguished.  Therefore, upon obtaining its judgment against SSC, MIU was unable to execute on its attachment writ as SSC no longer possessed an interest in the M/V Saipan Lady.

In conclusion, MIU now possesses only a personal judgment against SSC and has no claim, by way of a maritime or judgment lien, on the M/V Saipan Lady. Plaintiff's motion to dismiss is accordingly GRANTED.

DATED this ___15th___ day of November, 1983.

_____
JUDGE ALFRED LAURETA