**ENERGY TRANSPORT, LTD. and PT CABOT INDONESIA, Plaintiffs,**

v.

**M.V. SAN SEBASTIAN, her freights, etc., in rem, and Oilmar Co., Ltd., Panama, in personam, Defendants.**

No. 03 CIV. 4193(PKL).

United States District Court, S.D. New York.

June 28, 2003.

Edward C. Radzik, Donovan, Parry, McDermott & Radzik, New York City, for Energy Transport, Ltd., PT Cabot Indonesia, plaintiffs.

Jeremy J.O. Harwood, Healy & Baillie, L.L.P., New York City, for M.V. San Sebastian, her freights, etc., in rem, Oilmar Co., Ltd., Panama, in personam, defendants.

## ORDER

RAKOFF, District Judge.

■ Plaintiffs here seek a Writ of Arrest of the freights[1] of the defendant M.V. San Sebastian pursuant to Fed.R.Civ.P. Supp. R.C. Plaintiffs' two prior requests for similar relief under the Fed.R.Civ.P. Supp. R. B were denied, first by the Hon. Peter K. Leisure, to whom this case is otherwise assigned, and the second by this Court sitting in the Miscellaneous Part, to whom the matter was referred in Judge Leisure's absence. After receiving briefing, the Court conducted a hearing on this third request (which differs from the others in that it is lodged under Supp. R. C, rather than B) on June 27. *See* transcript, June 27, 2003. For the reasons that follow, the application is denied.

On March 7, 2003, plaintiff Energy Transport, Ltd. chartered the defendant M.V. San Sebastian, pursuant to a charter party with defendant (and shipowner) Oilmar Co., Ltd., to ship certain cargo, of which co-plaintiff PT Cabot Indonesia was the owner and consignee. Amended Complaint ¶¶ 5, 7. The freight for the shipment was to be paid by Energy Transport to an agent, Odin Marine, Inc., which would then transfer it at the prescribed time to Oilmar. Affidavit of Jeremy J.O. Harwood, sworn to Jun. 17, 2003 ("Harwood Aff. I"), Ex. 1 (Tanker Voyage Charter Party) at 1 ("Freight payable ... to Odin Marine, Inc. for onward transmission to head Owners ....."). Energy Transport also subchartered the vessel to an entity called Pacific Oil, Inc., which had its own cargo aboard the ship. Affidavit of Jeremy J.O. Harwood, sworn to Jun. 26, 2003 ("Harwood Aff. II"), ¶ 16; Declaration of Edward Radzik, sworn to Jun. 17, 2003 ("Radzik Decl."), Ex. 7. Pursuant to the subcharter, Pacific Oil, rather than paying its freight to Energy Transport, which would then pay it over to Odin Marine for delivery to Oilmar, paid its freight directly to Odin Marine.

Further to these arrangements, Pacific Oil, on or about June 6, 2003, paid approximately $1.1 million to Odin Marine, which held it in a New York account at J.P. Morgan Chase Bank for eventual forwarding to Oilmar. Amended Complaint ¶¶ 22–23; Harwood Aff. II ¶¶ 13–19; Radzik Decl. Ex. 6 ¶¶ 2–3. However, prior to this payment, a fire and explosion aboard the San Sebastian on or about May 2, 2003 damaged the cargo, causing plaintiffs to bring the underlying action here at issue alleging negligence and breach of contract by both the ship and its owner. Amended Complaint ¶ 13, 15–16. By the instant motion, plaintiffs seek to have the Court exer-

---

1. In maritime parlance, "freight" is "the compensation which the shipowner is to receive for carrying the goods." *Caparelli v. Proceeds of Freight,* 390 F.Supp. 1345, 1349 (S.D.N.Y.1974); *accord* Black's Law Dictionary 666 (6th ed. 1990) ("The price or compensation paid for the transportation of goods by a carrier.").

cise its *in rem* jurisdiction under Rule C to arrest the freights held in Odin Marine's bank account, contending they have a maritime lien on these freights arising from the underlying claims. Affidavit of Edward C. Radzik, sworn to Jun. 27, 2003, ¶ 12.

Rule C provides that a plaintiff may proceed *in rem* "[t]o enforce any maritime lien," Rule C(1), and that the Court may order the arrest "of the vessel or other property that is the subject of the action" if "the conditions for an *in rem* action appear to exist" from the face of the verified complaint, Rule C(3)(a)(ii). A shipper has a maritime lien on the vessel herself for damage to the shipper's cargo, *see Oriente Commercial, Inc. v. M/V Floridian*, 529 F.2d 221, 221–22 (4th Cir. 1975); *British West Indies Produce Inc. v. S/S Atlantic Clipper*, 353 F.Supp. 548, 554–55 (S.D.N.Y.1973); 80 C.J.S. Shipping § 367; 1 Thomas J. Schoenbaum, *Admiralty & Maritime Law* 498 & n. 16 (3d ed.2001), and such a lien is deemed to attach from when the cargo is loaded on board the vessel. *Belvedere v. Compania Plomari De Vapores, S.A.*, 189 F.2d 148, 150 (5th Cir.1951). A charterer also has a lien against the vessel for breach of the charter party. *The Oceano*, 148 F. 131 (S.D.N.Y.1906); 2 Benedict on Admiralty § 45, at 3–53 (7th rev'd ed.1995).

But what about the freights due for shipment of the cargo? Maritime law distinguishes in this regard between unpaid freights, which, by extension are considered "incidental to and indistinguishable from the vessel," *Morrisey v. S.S. A & J Faith*, 238 F.Supp. 877, 878 (D.C.Ohio 1964), *see* 2 Benedict, *supra*, § 31, at 3–2 n. 5; 29 Moore's Federal Practice § 705.01[6][d], at 705–21 (3d ed.2000), and paid freights, which are "not considered a part of the vessel," 1 Schoenbaum, *supra*, at 503. The reason is that once the freight is paid it can no longer be viewed as part of the ship. As explained by the late Hon. Sylvester Ryan of this Court, the point of payment is also the point of "separation of the freights from the personage of the ship." *Galban Lobo Trading Co. v. The Diponegaro*, 103 F.Supp. 452, 454 (S.D.N.Y.1951) (internal quotation marks omitted; *see also* 80 C.J.S. Shipping § 367 & n. 1).

In *The Diponegaro*, the shipper brought an *in rem* action against the ship, seeking to attach freight that was "prepaid" to the shipowner's agent. Judge Ryan held that although the cargo owner had a lien on the ship itself, including its "hull, tackle, sails, rigging, and equipment," the cargo owner had no lien on the monies paid for the transportation of his (now damaged) goods, because the freights "had become a fund separate and apart from the ship itself." *The Diponegaro*, 103 F.Supp. at 454.

While plaintiffs argue that *The Diponegaro* is distinguishable because the freight there was seemingly paid even before the cargo was loaded and the lien attached, this is not a relevant distinction: for as Judge Ryan makes clear, the real distinction is between unpaid freights that can, by an admittedly strained but historically recognized extension, still be said to be part of the ship, and paid freights, which are far beyond any such legal fiction.

Here, Pacific Oil, pursuant to the subcharter, paid the $1.1 million in freight directly to Odin Marine, which held them not for Energy Transport, but for purposes of forwarding the freight payments to Oilmar. *See* Harwood Aff. I. Ex. 12 at 2. In such circumstances, by no stretch of the imagination could these freights be viewed either as unpaid or as part of the ship. Accordingly, no *in rem* jurisdiction

attaches to them and plaintiffs' application under Rule C must therefore be denied.

SO ORDERED.